Sealed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-21971-MC-ALTONAGA

FILED by MP D.C.
JUN 02 2016
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

BANCO SAFRA S.A.,

Applicant,

IN RE EX-PARTE APPLICATION OF BANCO SAFRA S.A. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

_______________________________________/

**APPLICANT BANCO SAFRA S.A.'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ITS EX-PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 2

A. Introduction and Overview ........ 2

B. Banco Safra and the Parties From Whom it Seeks Discovery ........ 3

C. The Underlying Bank Credit Certificates and Guarantee Agreements ........ 4

D. The Individual Guarantors' Default and Banco Safra's Commencement of Enforcement Proceedings in Brazil ........ 5

E. The Individual Guarantors' Fraudulent Conveyances to the LLC Respondents, Which Banco Safra Seeks to Have Annulled in the Brazilian Proceedings ........ 7

ARGUMENT ........ 9

A. Courts Routinely Grant Section 1782 Relief *Ex-Parte*, and Such Relief is Particularly Critical in This Case ........ 9

B. Banco Safra's Application Satisfies All of the Statutory Requirements for Discovery Under Section 1782 ........ 10

1. Banco Safra Is an Interested Person ........ 11

2. Section 1782 Expressly Authorizes this Court to Order the Document Production and Deposition Testimony Banco Safra Seeks ........ 11

3. Banco Safra Seeks Such Documents and Testimony for Use in a Proceeding in a Foreign Tribunal ........ 11

4. All Respondents Reside or Are Found in Miami ........ 12

C. The Discretionary Factors Weigh in Favor of Granting the Application ........ 13

1. The Brazilian Courts Lack Authority to Order Respondents to Produce the Documents and Testimony Banco Safra Seeks ........ 13

2. Brazilian Courts Are Receptive to Section 1782 Assistance ........ 14

3. This Application is Not an Attempt to Circumvent Brazilian Proof-Gathering Restrictions ........ 14

4. The Discovery Banco Safra Seeks is Not Intrusive or Burdensome ........ 15

CONCLUSION ........ 17

## PRELIMINARY STATEMENT

The purpose of the discovery that Banco Safra S.A. ("Banco Safra") seeks by means of this application pursuant to 28 U.S.C. § 1782 (the "Application") is to assist Banco Safra in locating and recovering assets in aid of pending enforcement proceedings in the Brazilian courts (the "Brazilian Proceedings"). Banco Safra has learned that two Brazilian individuals from whom Banco Safra seeks to recover approximately $10.5 million in the Brazilian Proceedings following their default under a series of guarantee agreements have transferred ownership of several valuable real properties in Brazil to a number of shell companies controlled by their close family members in an evident attempt to avoid execution. These fraudulent conveyances have resulted in two family-controlled Miami-based LLCs indirectly owning the subject real properties.

Banco Safra is actively seeking to have these fraudulent conveyances annulled in the Brazilian Proceedings. In the meantime, however, Banco Safra is concerned that the debtors may have transferred other property or funds that otherwise would have been available for potential execution in Brazil to the same LLCs in furtherance of their apparent scheme to shield their assets from execution. The limited discovery Banco Safra seeks will enable it to determine whether the debtors engaged in any other fraudulent conveyances to these Miami-based LLCs of which Banco Safra remains unaware, and which it could seek to have annulled in the Brazilian Proceedings—thereby gaining access to additional assets for potential execution.

As set forth in full below, Banco Safra's Application satisfies all of the statutory requirements for Section 1782 discovery, and the discretionary factors the United States Supreme Court has identified likewise weigh in Banco Safra's favor. Accordingly, Banco Safra respectfully requests that the Court grant its Application and its Motion pursuant to Section 1782.

## FACTUAL BACKGROUND

### A. Introduction and Overview

The pending Brazilian Proceedings in aid of which Banco Safra seeks Section 1782 discovery arise from the defaults of two individuals, Jaime Martins and his father João do Carmo Martins ("João Martins" and, together with Jaime Martins, the "Individual Guarantors"), under a series of credit instruments and related guarantee agreements with Banco Safra and its affiliates. *See* May 31, 2016 Declaration of André de Luizi Correia ("Correia Decl."), attached hereto as Exhibit 1, ¶¶ 4, 7. In the Brazilian Proceedings, Banco Safra seeks recovery of unpaid amounts totaling nearly $10.5 million, plus interest, from the Individual Guarantors. *Id.* ¶ 23.

Following the Individual Guarantors' defaults, Banco Safra discovered that they had devised a complex and intricate scheme to avoid execution against their assets by shifting ownership of their valuable real properties in Brazil in a series of transfers to shell companies controlled by members of their families. *Id.* ¶ 30. As a result of these transfers, two family-controlled, Miami-based LLCs are now the indirect owners of the Brazilian properties. *Id.* ¶ 36.

Among the pending Brazilian Proceedings are two actions (comparable to fraudulent conveyance actions) in which Banco Safra seeks to have the Brazilian courts declare these transfers fraudulent and therefore ineffective. *Id.* ¶¶ 37-39. In light of the Individual Guarantors' fraudulent transfer of ownership of their Brazilian real properties to the two Miami-based LLCs, Banco Safra has reason to believe the Individual Guarantors may have transferred additional property or funds that otherwise would have been available for attachment and execution in Brazil to (or through) the LLCs in an effort to avoid execution. *Id.* ¶ 41. Accordingly, Banco Safra now seeks this Court's assistance in obtaining discovery from the two Miami-based LLCs and the individual who signed the LLCs' certificates of formation and serves as their manager.

### B. Banco Safra and the Parties From Whom it Seeks Discovery

Applicant Banco Safra S/A ("Banco Safra") is a private financial institution with its principal place of business at Av. Paulista No. 2100, in the City and State of São Paulo, Brazil. Correia Decl. ¶ 6.

Respondent Xelor USA LLC ("Xelor") is a Delaware limited liability company formed in June 2013. Article 1.6 of the Limited Liability Company Bylaws for Xelor provides that "[t]he principal office of the LLC shall be at 825 Brickell Bay Drive, Apt 1151, Miami, FL." Correia Decl. Ex. C, at 4.

Respondent Drof LLC ("Drof" and, together with Xelor, the "LLC Respondents") is a further Delaware limited liability company formed in September 2013. Article 1.6 of the Limited Liability Company Bylaws for Drof provides that "[t]he principal office of the LLC shall be at 825 Brickell Bay Drive, Apt 1151, Miami, FL." Correia Decl. Ex. D, at 6.

Respondent Antônio Assumpção ("Assumpção") is the individual who signed the Certificates of Formation of both LLC Respondents in his capacity as an "Authorized Person." Correia Decl. Ex. C, at 17; *id.* Ex. D, at 5. Further, Article 2.1 of both LLC Respondents' bylaws expressly designate Respondent Assumpção as the LLC Respondents' manager. Correia Decl. Ex. C, at 9; *id.* Ex. D, at 7. On information and belief, Respondent Assumpção is a resident of Miami, residing in the same condominium located at 825 Brickell Bay Drive, Apt 1151, Miami, FL that also serves as the LLC Respondents' principal office. The records available through the Office of the Property Appraiser of Miami-Dade County identify Respondent Assumpção (together with his wife, Fernanda Figueiredo Assumpção) as the owner of that condominium. *See* Exhibit A, at 1, to the June 1, 2016 Declaration of Andreas A. Frischknecht ("Frischknecht Decl."), attached hereto as Exhibit 2.

### C. The Underlying Bank Credit Certificates and Guarantee Agreements

The pending Brazilian Proceedings arise from the Individual Guarantors' defaults as guarantors under a series of 13 loans (the "Loans") that Banco Safra and two of its foreign branches issued to a Brazilian group of car retailers called Gran Barra (the "Gran Barra Group") between December 2013 and November 2014. Correia Decl. ¶ 7. The Individual Guarantors are the controlling shareholders of the Gran Barra Group. *Id.*

Each of the 13 Loans in the aggregate amount of nearly $17 million was documented in a credit instrument known as a bank credit certificate (a "Bank Credit Certificate"). *Id.* ¶ 11. Each Bank Credit Certificate was issued by one of several companies within the Gran Barra Group (each a "Group Company"). Of the total 13 Bank Credit Certificates, 12 were issued in favor of Banco Safra's Cayman Islands branch ("Safra Cayman") or its Luxembourg branch ("Safra Luxembourg"), and one was issued in favor of Banco Safra itself. *Id.*

Each of the 12 Bank Credit Certificates issued to Safra Cayman or Safra Luxembourg was accompanied by a side guarantee agreement (together, the "Guarantee Agreements") between the debtor Group Company, Banco Safra and three guarantors: the two Individual Guarantors and an additional Group Company guarantor. *Id.* ¶ 12. These 12 Guarantee Agreements named Safra Cayman or Safra Luxembourg as the beneficiary and provided that if the debtor Group Company defaulted on the relevant Loan, Banco Safra would pay the guaranteed sum directly to the beneficiary and subrogate into the beneficiary's rights as creditor vis-à-vis the defaulting Group Company—in which case the Individual Guarantors and the additional Group Company guarantor would guarantee payment to Banco Safra. *Id.* Unlike the other 12 Guarantee Agreements, the single Bank Credit Certificate issued to Banco Safra itself ("Bank Credit Certificate n°

000376872") was guaranteed solely by Jaime Martins, and his guarantee was included in Bank Credit Certificate n° 000376872 itself (rather than a separate side agreement). *Id.* ¶ 14.

Importantly, each of the 12 Bank Credit Certificates issued to Safra Cayman or Safra Luxembourg provides that each guarantor (including the two Individual Guarantors) is jointly and severally liable with the debtor for full payment of the debt. *Id.* ¶ 13. Similarly, Bank Credit Certificate n° 000376872 provides that Jaime Martins is jointly and severally liable with the debtor for full payment of the debt under that Bank Credit Certificate. *Id.* ¶ 14.

### D. The Individual Guarantors' Default and Banco Safra's Commencement of Enforcement Proceedings in Brazil

In February 2015, the Group Companies comprising the Gran Barra Group filed for restructuring under Brazilian bankruptcy law (comparable to a Chapter 11 reorganization in the United States) in Rio de Janeiro, Brazil (the "Brazilian Restructuring Proceeding"). Correia Decl. ¶ 15. At the time they commenced the Brazilian Restructuring Proceeding, none of the relevant Group Companies was yet in default under any of the Bank Credit Certificates, but commencement of the Brazilian Restructuring Proceeding had the effect under Brazilian law of automatically staying any Group Company payment obligations under the Bank Credit Certificates. *Id.* ¶¶ 16-17. Accordingly, none of the debtor Group Companies made any further payments under the Bank Credit Certificates upon commencement of the Brazilian Restructuring Proceeding. *Id.* ¶ 18.

As a result of the debtor Group Companies' non-payment, Safra Cayman and Safra Luxembourg exercised their rights under the Guarantee Agreements accompanying the 12 Bank Credit Certificates issued to them by demanding (and receiving) payment from Banco Safra. *Id.* ¶ 19. Banco Safra's payment, in turn, triggered Banco Safra's subrogation into Safra Cayman's and Safra Luxembourg's rights as creditors vis-à-vis the debtor Group Companies and—more importantly—also triggered the Individual Guarantors' guarantees of payment to Banco Safra. *Id.*

This triggering of the Individual Guarantors' obligations under the Bank Credit Certificates and Guarantee Agreements was critical because Brazilian law suspends Banco Safra's ability to file for judicial execution against any of the Group Companies during the pendency of the Brazilian Restructuring Proceeding but permits judicial execution to go forward against the Individual Guarantors, who remained (and remain) liable for the entire unpaid debt owed to Banco Safra. *Id.* ¶ 22.

After demanding (but failing to receive) payment from the Individual Guarantors, Banco Safra commenced two enforcement proceedings (the "Enforcement Proceedings") against the Individual Guarantors under the Guarantee Agreements and Bank Credit Certificates. *Id.* ¶ 23. Holders of bank credit certificates have special enforcement rights under Brazilian law and are entitled to file a request for immediate judicial enforcement against the debtor. *Id.* ¶ 10.

In March 2015, Banco Safra commenced the first Enforcement Proceeding against Jaime Martins in Rio de Janeiro seeking to recover nearly $300,000 under Bank Credit Certificate n° 000376872. *Id.* ¶ 24. In October 2015, Banco Safra commenced a second Enforcement Proceeding in São Paulo against both Individual Guarantors seeking to recover approximately $10.2 million under the 12 Bank Credit Certificates issued to Safra Cayman and Safra Luxembourg and the accompanying Guarantee Agreements. *Id.* ¶ 27. Accordingly, the aggregate amount Banco Safra seeks to recover in the Enforcement Proceedings is approximately $10.5 million (not including interest that has continued to accrue since the Enforcement Proceedings were filed in March and October 2015, respectively). *Id.* ¶ 23. Both Enforcement Proceedings remain pending (Jaime Martins has been served and has filed an objection in the first Enforcement Proceeding, and service of process on both Individual Guarantors was recently completed in the second Enforcement Proceeding). *Id.* ¶¶ 26, 29.

### E. The Individual Guarantors' Fraudulent Conveyances to the LLC Respondents, Which Banco Safra Seeks to Have Annulled in the Brazilian Proceedings

Following the Individual Guarantors' defaults under the Bank Credit Certificates and Guarantee Agreements, Banco Safra consulted the Real Property Registry in Brazil to determine whether the Individual Guarantors owned any real property that might be available for attachment and execution. Correia Decl. ¶ 30. The Real Property Registry revealed that the Individual Guarantors had devised a complex and intricate scheme to transfer ownership of their real property in Brazil in a series of transfers in 2013 to shell companies controlled by family members in order to avoid execution. *Id.*

As Banco Safra discovered, the Individual Guarantors' respective schemes were remarkably similar and involved three steps. First, each of the Individual Guarantors transferred title to multiple real properties they owned in Brazil to certain previously formed Brazilian shell companies. Next, the Individual Guarantors gifted all of their shares in these shell companies to certain of their children. Finally, the children transferred their shares in the shell companies to the two LLC Respondents (Respondent Xelor in the case of the shell companies holding the properties previously owned by Jaime Martins, and Respondent Drof in the case of the shell companies holding the properties previously owned by João Martins). *Id.* ¶¶ 31-32, 34. The LLC Respondents are controlled by close family members of the Individual Guarantors (namely Jaime Martins' two children in the case of Respondent Xelor and João Martins' son and second wife in the case of Respondent Drof). *Id.* ¶¶ 32, 34. As a result of this series of transfers, the two LLC Respondents are now the indirect owners (via their shareholdings in the underlying shell

companies) of the real properties in Brazil that previously were owned by the Individual Guarantors. *Id.* ¶ 36.[1]

Upon discovering the Individual Guarantors' schemes, Banco Safra commenced two civil actions known as Paulian actions (the "Paulian Actions") in Brazil. *Id.* ¶ 37. The Paulian Actions are comparable to a fraudulent conveyance action and seek to annul the chain of transactions just described. *Id.* More specifically, the Paulian Actions seek a declaration from the Brazilian courts that these transfers were fraudulent and therefore ineffective. *Id.* ¶ 39. In November 2015, Banco Safra commenced the first Paulian Action in Rio de Janeiro against Jaime Martins, his family members, the shell companies involved and the ultimate transferee (Respondent Xelor). *Id.* ¶ 37; Exs. E & F. Shortly thereafter, in late November 2015, Banco Safra commenced the second Paulian Action in Rio de Janeiro against João Martins, his son, the shell companies involved and the ultimate transferee (Respondent Drof). *Id.* ¶ 38; Exs. G & H. Both Paulian Actions remain pending (all defendants in both actions have now been served and have filed their defenses). *Id.* ¶ 39.

Based on the Individual Guarantors' transfer of ownership of their Brazilian real properties to the two LLC Respondents, Banco Safra has reason to believe the Individual Guarantors may have transferred additional property or funds that otherwise would have been available for attachment and execution in Brazil to (or through) one or both of the LLC Respondents in an effort to avoid execution. *Id.* ¶ 41. However, while the LLC Respondents are parties to the Paulian Actions, Banco Safra has no means of obtaining discovery from the LLC Respondents in Brazil to confirm what, if any, additional property or funds may have been transferred to them because the

---

1 An unknown individual by the name of Manoel de Souza Vales Jr. holds a single share in each of the underlying shell companies, with the LLC Respondents holding all of the remaining shares. Correia Decl. ¶¶ 32, 34.

Brazilian courts lack authority under Brazilian law to order the Respondent LLCs to produce to Banco Safra any documents located outside Brazil, nor the testimony of any witness located outside Brazil. *Id.* ¶ 40. In sum, therefore, the only way Banco Safra can obtain the documents and testimony it seeks from the LLC Respondents in a timely manner is through this Application. *Id.*

## ARGUMENT

Banco Safra's application for limited discovery in aid of the Brazilian Proceedings should be granted. "Section 1782(a) provides that a federal district court 'may order' a person 'resid[ing]' or 'found' in the district to give testimony or produce documents 'for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person.'" *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004).

Section 1782 "is the product of congressional efforts, over the span of [more than] 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals" and "reveals Congress' wish to *strengthen* the power of district courts to respond to requests for international assistance." *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1268-69 (11th Cir. 2014) (citations omitted; emphasis and alteration in original). Accordingly, once an applicant satisfies the statutory requirements under Section 1782, a district court has "wide discretion" to grant the application. *Id.* at 1271 (citation omitted). As shown below, Banco Safra meets all of the statutory requirements under Section 1782, and the discretionary *Intel* factors weigh in favor of granting the Application.

### A. Courts Routinely Grant Section 1782 Relief *Ex-Parte*, and Such Relief is Particularly Critical in This Case

The Eleventh Circuit has recognized that courts may grant applications for discovery in aid of foreign proceedings under Section 1782 on an *ex-parte* basis, and courts in this district routinely

grant such relief *ex-parte*. *See In re Clerici,* 481 F.3d 1324, 1337 (11th Cir. 2007) (affirming district court's denial of motion to vacate order granting *ex parte* application); *In re Alianza Fiduciaria S.A.*, No. 13-81002-MC, 2013 WL 6225179, at *2 (S.D. Fla. Oct. 24, 2013) ("[T]he Court finds that this type of ex parte application for [Section 1782] discovery is proper. Courts, including those in the Southern District of Florida, commonly grant such ex parte applications."); *In re Braga,* 272 F.R.D. 621, 625 (S.D. Fla. 2011) ("[M]ost § 1782 applications (at least in this district) are filed and decided ex parte.").

As the Individual Guarantors' conduct demonstrates, *ex-parte* relief is particularly critical here. Given the Individual Guarantors' alleged scheme to avoid execution by transferring ownership of their real properties to the LLC Respondents, a real risk exists that the Individual Guarantors (and their close family members who control the LLC Respondents) will take immediate action to cause the LLC Respondents to move any assets or funds in their possession, custody or control beyond this Court's jurisdiction—or otherwise to impede Banco Safra's efforts to obtain evidence concerning any assets or funds in the LLC Respondents' possession, custody or control—if they receive notice of the Application. On that basis, *ex-parte* relief is not only warranted, but essential, in this case.

### B. Banco Safra's Application Satisfies All of the Statutory Requirements for Discovery Under Section 1782

The Application easily satisfies each of the four requirements for discovery under Section 1782: (1) Banco Safra is an "interested person" under the statute; (2) the Application seeks material in the form of "the 'testimony or statement' of a person or the production of 'a document or other thing'"; (3) Banco Safra seeks this material "for use in a proceeding in a foreign . . . tribunal"; and (4) Respondents, "from whom discovery is sought," reside in or are "found in th[is] district." *In re Clerici*, 481 F.3d at 1331-32 (quoting 28 U.S.C. § 1782(a)).

1. Banco Safra Is an Interested Person

As the plaintiff in the Brazilian Proceedings, Banco Safra qualifies as an "interested person" entitled to seek discovery under Section 1782. The United States Supreme Court has made clear that "litigants [before foreign courts] are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel,* 542 U.S. at 256; *accord, e.g., In re Alianza Fiduciaria,* 2013 WL 6225179, at *3 (holding that parties to "a pending pretrial proceeding in Colombia" were "clearly interested persons with the meaning of [Section 1782]"). Accordingly, the Application satisfies the first statutory requirement for discovery under Section 1782.

2. Section 1782 Expressly Authorizes this Court to Order the Document Production and Deposition Testimony Banco Safra Seeks

An application such as Banco Safra's here seeking "deposition testimony and documentary evidence" satisfies "the second statutory requirement." *In re Alianza Fiduciaria*, 2013 WL 6225179, at *3. Indeed, Section 1782 expressly authorizes district courts to order discovery in the form of both "testimony" as well as the "produc[tion of] a document or other thing" "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a). Accordingly, the Application satisfies the second statutory requirement for discovery under Section 1782.

3. Banco Safra Seeks Such Documents and Testimony for Use in a Proceeding in a Foreign Tribunal

Given that Banco Safra seeks the documents and testimony specified in the Application for use in the Brazilian Proceedings, Banco Safra easily satisfies Section 1782's requirement that the material sought must be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Notably, the Eleventh Circuit has made clear that "Section 1782 does not require that every document discovered be actually used in the foreign proceeding." *Weber v. Finker*, 554

F.3d 1379, 1385 (11th Cir. 2009). Moreover, a party's use of material obtained in a Section 1782 proceeding may take a variety of forms, including "to develop a theory of the case, to prepare a complaint, to lead [the party] to admissible evidence, to help it to settle a case, and to accomplish other aspects of prosecuting or defending a case." *Glock v. Glock, Inc.*, 797 F.3d 1002, 1007 (11th Cir. 2015). Accordingly, the Application satisfies the third statutory requirement for discovery under Section 1782.[2]

4. <u>All Respondents Reside or Are Found in Miami</u>

Finally, all of the Respondents "reside[]" or are "found" in this District within the meaning of Section 1782. 28 U.S.C. § 1782(a). The LLC Respondents both satisfy this requirement because Article 1.6 of their respective bylaws expressly provides that "[t]he principal office of the LLC shall be at 825 Brickell Bay Drive, Apt 1161, Miami, FL." Correia Decl. Ex. C, at 4; *id.* Ex. D, at 6; *see In re Gorsoan Ltd.*, No. 13 MISC. 397 PGG, 2014 WL 7232262, at *5 (S.D.N.Y. Dec. 10, 2014) (application "satisfie[d] the statutory factors" under Section 1782 where applicant sought discovery from LLC that "ha[d] its principal place of business in New York, New York").

Likewise, Respondent Assumpção "resides" or is "found" at the same address in Miami because he is the co-owner of that property which, on information and belief, is his primary residence. *See* Frischknecht Decl. Ex. A, at 1. Accordingly, the Application satisfies the fourth and final statutory requirement for discovery under Section 1782.

---

2 Even if the Brazilian Proceedings could be deemed post-judgment proceedings, this would not impact their status as foreign court proceedings that qualify for Section 1782 assistance. *See In re Clerici,* 481 F.3d at 1333 (rejecting as "without merit" argument that a "post-judgment petition regarding a judgment that already has been rendered is not a 'proceeding' within the meaning of [Section 1782]").

### C. The Discretionary Factors Weigh in Favor of Granting the Application

Where, as here, the statutory requirements are satisfied, district courts have discretion to grant a Section 1782 application after considering the following four factors:

> (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is otherwise 'unduly intrusive or burdensome.'

*In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264-65). As discussed immediately below, all four of these *Intel* factors weigh in favor of granting the Application here.

#### 1. <u>The Brazilian Courts Lack Authority to Order Respondents to Produce the Documents and Testimony Banco Safra Seeks</u>

The first *Intel* factor weighs in Banco Safra's favor because Respondent Assumpção is not a party to the Brazilian Proceedings, and the LLC Respondents' status as defendants in the Paulian Actions is not to the contrary "[g]iven the particular factual circumstances in this case." *In re Clerici,* 481 F.3d at 1335. Importantly, Section 1782 assistance is Banco Safra's only means of timely obtaining the documents and testimony it seeks because the Brazilian courts lack authority to order the LLC Respondents to produce to Banco Safra any documents located outside Brazil, nor the testimony of any witness located outside Brazil. Correia Decl. ¶ 40.

As a result, the rationale that the need for Section 1782 discovery "generally is not as apparent" when the respondent is a party to the foreign proceeding because the foreign tribunal "can itself order [the respondent] to produce evidence" does not apply here. *Intel,* 542 U.S. at 264.

Instead, the dispositive question is whether the foreign tribunal actually has the power to order the discovery sought from the respondent. *See In re Clerici*, 481 F.3d at 1334-35 (holding that "the first [*Intel*] factor does not favor [respondent] because . . . the Panamanian Court cannot enforce its order against [respondent] directly while [he] is in the United States").

Accordingly—because the Brazilian courts lack the necessary authority to order the LLC Respondents to produce the documents and testimony Banco Safra seeks—the first *Intel* factor weighs in favor of granting the Application.

2. Brazilian Courts Are Receptive to Section 1782 Assistance

The second *Intel* factor likewise weighs in Banco Safra's favor because the Brazilian courts will not hesitate to accept any relevant evidence that Banco Safra obtains by means of this Application. Correia Decl. ¶¶ 42-44. Consistent with the Brazilian courts' receptiveness to Section 1782 assistance, courts in this Circuit routinely grant such assistance in aid of Brazilian proceedings. *See, e.g.*, *Lopes v. Lopes*, 180 F. App'x 874, 878 (11th Cir. 2006) (affirming discovery order in aid of Brazilian court proceedings); *In re Xavier*, No. 05-12218, 2006 WL 858489, at *1 (11th Cir. Apr. 4, 2006) (same); *In re Pimenta*, 942 F. Supp. 2d 1282, 1288-89 (S.D. Fla. 2013) (finding no evidence that Brazilian court would be unreceptive to Section 1782 assistance). Accordingly, the second *Intel* factor weighs in favor of granting the Application.

3. This Application is Not an Attempt to Circumvent Brazilian Proof-Gathering Restrictions

The third *Intel* factor similarly favors granting Section 1782 assistance because Banco Safra is not attempting to circumvent any proof-gathering restrictions under Brazilian law by means of this Application. On the contrary, Brazilian law does not restrict the collection of the documents and testimony Banco Safra seeks. Correia Decl. ¶ 43.

Other federal courts likewise have found no indication that a request for Section 1782 assistance amounts to an attempt to circumvent Brazilian laws or procedures. *See Madeiros v. Int'l Game Technology,* No. 2:16-cv-00877(JAD)(NJK), 2016 WL 1611591, at *3 (D. Nev. Apr. 22, 2016) (finding no indication in the record that "allowing discovery through the instant proceeding would circumvent proof-gathering restrictions" in Brazil); *Fleischmann v. McDonald's Corp.*, 466 F. Supp. 2d 1020, 1032 (N.D. Ill. 2006) (rejecting argument that Section 1782 application should be deemed "an attempt to circumvent the Brazilian proof-gathering process because Petitioners did not ask a Brazilian court for this discovery first"); *see generally In re Mesa Power Grp., LLC,* 878 F. Supp. 2d 1296, 1305 (S.D. Fla. 2012) ("Absent a persuasive showing that a section 1782 applicant . . . is actively seeking to circumvent the foreign tribunal's discovery methods and restrictions . . . this factor does not counsel against section 1782 relief."). Accordingly, the third *Intel* factor weighs in favor of granting the Application.

4. The Discovery Banco Safra Seeks is Not Intrusive or Burdensome

Finally, the fourth *Intel* factor also weighs in favor of granting the Application because the discovery Banco Safra seeks is not "unduly intrusive or burdensome." *In re Clerici,* 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 265). Rule 26(b)(1), pursuant to which "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," determines the proper scope of Section 1782 discovery. *See Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009) (scope of permissible discovery under Section 1782 turns on whether "such discovery is allowed under Rule 26(b)(1)").[3]

---

3 The Federal Rules of Civil Procedure govern discovery under Section 1782. *See In re Clerici,* 481 F.3d at 1336 ("Once discovery is authorized under § 1782, the federal discovery rules, Fed. R. Civ. P. 26-36, contain the relevant practices and procedures for the taking of testimony and the production of documents.").

The limited discovery Banco Safra seeks falls squarely within the permissible scope of discovery under Fed. R. Civ. P. 26(b)(1) because Banco Safra's request is "narrowly tailored" and concerns matters that are "undeniably at issue" in the Brazilian Proceedings. *Consorcio Ecuatoriano de Telecomunicaciones*, 747 F.3d at 1265 (affirming grant of Section 1782 assistance where application "was narrowly tailored and primarily requested information concerning [matters that were] undeniably at issue in the current dispute between the parties"). The documents and testimony Banco Safra seeks by means of this Application concern the bank accounts, books and records and (in particular) any conveyance of property or funds to or from the LLC Respondents—the ultimate transferees and current holders of the real properties that are the subject of the Paulian Actions in Brazil, and which Banco Safra contends were fraudulently transferred to the LLC Respondents at the direction of Jaime Martins and João Martins in an attempt to preclude execution against those assets in the Brazilian Proceedings.

Courts have not hesitated to grant Section 1782 assistance in comparable circumstances. *See, e.g., In re Setraco Nigeria Ltd.*, No. 3:13-mc-16-32(MCR), 2013 WL 3153902, at *1, *3 (M.D. Fla. Jun. 19, 2013) (where applicant suspected that a particular bank account "may have been used by [adverse parties] to siphon funds illegally," court granted Section 1782 application to serve subpoena requiring bank to produce "[a]ll documents pertaining to any open or closed . . . accounts" of the adverse parties); *In re Chevron Corp.*, No. 11-24599-CV, 2012 WL 3636925, at *15 (S.D. Fla. Jun. 12, 2012) (granting Section 1782 application where proposed "subpoena [wa]s narrowly tailored towards obtaining information relevant to" the foreign proceedings and the requested documents "relate[d] to the fraud alleged" in those proceedings). Accordingly, the fourth and final *Intel* factor weighs in favor of granting the Application. Proposed subpoenas requiring (1) the production of documents by each of Respondents Antônio Assumpção, XELOR

USA LLC and DROF LLC; and (2) the depositions of Respondent Antônio Assumpção, and of one or more officers, directors, managing agents or other designated persons of each of Respondents XELOR USA LLC and DROF LLC, are attached as Exhibits 3, 4, and 5 to the Motion and Memorandum of Law.

## CONCLUSION

For all of the foregoing reasons, Banco Safra respectfully requests that the Court grant its Ex-Parte Application and Motion for an Order authorizing discovery pursuant to 28 U.S.C. § 1782. A proposed Order is attached to this Motion as Exhibit 6.

Dated: June 2, 2016

Respectfully submitted,

Janet T. Munn
Fla. Bar No. 501281
Email: jmunn@rascoklock.com
**RASCO KLOCK PEREZ & NIETO, P.L.**
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, FL 33134
Telephone: 305.476.7101
Facsimile: 305.476.7102

Andreas A. Frischknecht by Janet T. Munn

Andreas A. Frischknecht*
a.frischknecht@chaffetzlindsey.com
**CHAFFETZ LINDSEY LLP**
1700 Broadway, 33rd Floor
New York, NY 10019
Telephone: 212.257.6960
Facsimile: 212.257.6950

** Pro Hac Vice Motion to Be Filed*

*Attorneys for Ex-Parte Applicant*
*Banco Safra S.A.*